UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN THE MATTER OF<br>THE EXTRADITION OF<br>MARIA DE GRACA LOPES<br>LORENCO BRUNNER | )<br>)<br>)<br>) Magistrate Case No. 24-mj-49<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

The United States filed a motion in this matter to temporarily detain Ms. Maria de Graca Lopes Lorenco Brunner ("Ms. Lorenco") pending extradition proceedings. Ms. Lorenco opposed this motion and sought release on conditions pending her extradition hearing. Two hearings took place on March 1 and 4, 2024, pursuant to 18 U.S.C. § 3184. By oral ruling entered that same day, the Court granted the government's motion. This Memorandum Opinion and Order provides written findings of fact and supplements the Court's oral reasoning for its ruling.

## BACKGROUND

**I.  Factual and Procedural Background**

Philippine authorities filed charges against Ms. Lorenco on April 16, 2019 for frustrated parricide, in violation of Articles 246 and 50 of the Philippine Revised Penal Code. *See* Compl., ECF No. 1 ¶ 4; Mot. for Temporary Detention ("Mot."), ECF No. 5 at 1. A warrant was issued for her arrest in the Philippines on May 3, 2019. *See* Compl. ¶ 4. On February 6, 2024, this Court issued a complaint and arrest warrant seeking Ms. Lorenco's extradition to the Philippines per an extradition treaty between the United States and the Philippines. *See generally* Compl. In the Complaint, the United States has alleged that Ms. Lorenco is wanted for the crime of frustrated parricide by Philippine authorities. *See generally id.* Specifically, she is accused of

attempting to kill her ex-husband, Hans Peter Wolfgang Brunner ("Mr. Brunner"), by hitting him on the back of the head repeatedly with a meat tenderizer. *See id.* ¶ 5. Upon making the required probable cause determination, this Court issued an arrest warrant for Ms. Lorenco in accordance with 18 U.S.C. § 3184 and per Articles 2 and 17 of the Extradition Treaty between the United States of America and the Republic of the Philippines of November 13, 1994, entered into force on November 22, 1996 (the "Treaty"). *See* Decl. of Tom Heinemann, ECF No. 1-1 ¶¶ 2, 4–5. Consequently, Ms. Lorenco was arrested on February 29, 2024. *See* Executed Arrest Warrant, ECF No. 6.

On February 29, 2024, this Court held an initial appearance and return on arrest warrant hearing, and scheduled a bail hearing for the following day, on March 1, 2024. The Court heard argument on the United States' motion for detention on March 1, 2024 and heard further argument on March 4, 2024. The substantive extradition hearing is currently set for a date to be determined by the Court. *See* May 24, 2024, June 20, 2024, and July 15, 2024 Min. Orders (permitting Ms. Lorenco time to obtain additional evidence about her case in the Philippines).

## II.     Legal Standard

Pursuant to 18 United States Code Section 3184, "[w]herever there is a treaty or convention for extradition between the United States and any foreign government" a judge may, "upon complaint made under oath" issue a warrant for arrest. 18 U.S.C. § 3184. "After said arrest, the judge must conduct a hearing to determine whether the evidence is sufficient to sustain the charge under the provisions of the treaty." *Matter of Extradition of Pappas*, No. 23-cr-515, 2023 WL 7220053, at *2 (N.D. Ill. Nov. 2, 2023). Before reaching that step, however, courts may consider whether the fugitive should be detained or released pending the decision on extradition. *Id.*

The Bail Reform Act does not apply to detention in extradition proceedings. *Wright v. Henkel*, 190 U.S. 40, 63 (1903); 18 U.S.C. § 3181 *et seq*. Instead, Supreme Court precedent instructs lower courts to find a presumption of detention in extradition cases unless special circumstances warrant release. *Wright*, 190 U.S. at 63 (holding that "bail should not ordinarily be granted in cases of foreign extradition," but declining to hold that courts "may not in any case, and whatever the special circumstances, extend that relief"). This strong presumption applies because the government has an important interest "to ensure that the United States fulfills its international treaty obligations." *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 470 (S.D. Tex. 2010). "This is because extradition treaties create a binding obligation on the United States government to surrender fugitives to its treaty partners once they are found to be extraditable." *Id.*

The special circumstances test allows a defendant to overcome this presumption, but the Supreme Court in *Wright* did not articulate what factors constitute special circumstances that warrant release. *Id.* at 471 ("[W]hat constitutes special circumstances is anything but clear."). Unusual delay between when the alleged violation of law occurred and when charges are brought, and substantial health issues of the defendant are two examples of special circumstances. *In re Extradition of Huerta*, No. 08-mj-342, 2008 WL 2557514, at *1 (S.D. Tex. June 23, 2008). Issues common to all incarcerated defendants do not suffice, however. *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992). Courts have considerable discretion in determining whether special circumstances warrant release, *United States v. Ramnath*, 533 F. Supp. 2d 662, 684 (E.D. Tex. 2008), and often base their decision on the particular facts of the case and the circumstances of the particular defendant, *Pappas*, 2023 WL 7220053, at *4.

Although courts agree that a presumption of detention applies absent special circumstances, there is disagreement among courts over when and to what extent such circumstances should be considered in the court's analysis. *Pappas*, 2023 WL 7220053, at *2; *Garcia*, 761 F. Supp. 2d at 472 ("The case law also reflects an inconsistency among courts in their analysis of flight risk in relation to the 'special circumstances' inquiry."). "Most courts treat flight risk as a separate, independent factor from the special circumstances analysis." *Garcia*, 761 F. Supp. 2d at 472. However, courts have diverged regarding whether proving the absence of a risk of flight (or danger to the community) is a prerequisite that respondents to extradition petitions must meet *before* any consideration of special circumstances, or whether both issues should be addressed when resolving disputes over pre-extradition detention. Many courts have treated risk of flight or danger to the community as a threshold issue to clear before considering special circumstances. *See Pappas*, 2023 WL 7220053, at *2 (collecting cases); *Ramnath*, 533 F. Supp. 2d at 665 ("Generally, there are two prerequisites for setting bail. The court must find that the respondent is neither a flight risk nor danger to any person or the community."); *Matter of Extradition of Schumann*, No. 18-CR-283, 2018 WL 4777562, at *6 (N.D. Ill. Oct. 3, 2018) ("Whether [the defendant] is a flight risk or a danger to the community is not a question of special circumstances, but rather are factors that serve as conditions precedent that must exist before the court will even consider any special circumstances."). However, other courts have considered both issues instead of giving one precedence over the other. *See Garcia*, 761 F. Supp. 2d at 476–83; *Matter of Extradition of Ye Gon*, No. 08-596, 2009 WL 336092 (D.D.C. Oct. 15, 2009).

On the other hand, some courts adopt a more holistic, totality of the special circumstances framework and do not abide by the more formalistic two-step process where flight risk and

danger to the community are assessed prior to any consideration of special circumstances. But courts adopting this framework still often consider whether the individual is a flight risk and a danger to the community—they analyze these two things either *after* considering special circumstances or as a part of the special circumstances analysis. *United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 63 (D. Mass. 2010) ("In light of the special circumstances described above, this court must determine whether [the defendant] poses a serious risk of flight or danger to the community."); *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1295 (S.D. Fla. 2017) (considering special circumstances of defendant before assessing his risk of flight).

This Court will consider flight risk and danger to the community separate from the special circumstances analysis, consistent with the majority of cases.[1] *Berrocal*, 263 F. Supp. 3d at 1303 ("The majority of cases that have examined this question, . . . have concluded that the risk of flight analysis is a separate inquiry."). However, the Court will not treat the lack of a risk of flight or danger to the community as a threshold condition that must be met before the Court can reach the special circumstances analysis.

Courts assessing requests for detention also must determine the evidentiary requirements a respondent must meet to overcome the presumption of detention. "There is general agreement that the potential extradite bears the burden of establishing a bond is warranted," but courts are divided regarding the defendant's burden of persuasion. *Garcia*, 761 F. Supp. 2d at 474. While some courts require the fugitive to present clear and convincing evidence that bail is warranted, a smaller group of courts have adopted a lower, preponderance of the evidence standard. *See, e.g.*, *Ramnath*, 533 F. Supp. 2d at 665 (adopting clear and convincing standard); *In re Gonzalez*, 52 F.

---

[1] This Court will also consider danger to the community as a separate inquiry.

Supp. 2d 725, 735 (W.D. La. 1999) (same); *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1036 n.4 (C.D. Cal. 2006) (explicitly rejecting clear and convincing evidence as the burden of persuasion and analyzing the request for bail under a preponderance of the evidence standard); *Garcia v. Benov*, No. 08-cv-7719, 2009 WL 6498194, at *3 (C.D. Cal. April 13, 2009) (adopting preponderance of the evidence standard). Other courts have declined to decide this question altogether. *See, e.g.*, *Pappas*, 2023 WL 7220053, at *5 ("[T]he Court will not review this open question, as [the defendant] has presented sufficient evidence to establish special circumstances under either evidentiary standard."); *Matter of Perez-Cueva*, No. 16-0233M, 2016 WL 884877, at *2 (C.D. Cal. Mar. 7, 2016) ("It is not necessary for the Court to resolve this issue because, even assuming that the standard is preponderance of the evidence, [the defendant] has failed to satisfy this standard."). This Court declines to decide which burden of persuasion applies, because, for reasons explained below, Ms. Lorenco has failed to show by either clear and convincing evidence or a preponderance of the evidence, that the presumption of detention should not apply.

## DISCUSSION

In the instant motion, the United States argues that Ms. Lorenco (1) is a flight risk, (2) is a danger to the community, and (3) has not shown that special circumstances warrant her release. *See generally* Mot. Ms. Lorenco argues that several special circumstances warrant her release, and that she is neither a flight risk nor a danger to the community. *See generally* Opp'n, ECF No. 11.

I.      Flight Risk[2]

The Court first considers whether Ms. Lorenco is a flight risk.  After considering the arguments raised by both parties, the Court finds that Ms. Lorenco is a flight risk and has not satisfied her burden of demonstrating otherwise.

Starting with Ms. Lorenco's arguments, the Court recognizes that Ms. Lorenco has strong ties to Washington, D.C. and the East Coast generally, both of which mitigate her risk of flight.  She has lived in Georgetown for many years, owns a home there, and participates in church and volunteer activities in the neighborhood.  *See* Opp'n at 6–7.  She has lived openly in her Georgetown home since returning to D.C. in 2018.  *See id.* at 6.  Ms. Lorenco's sister and niece live in D.C., and the rest of her immediate family lives along the East Coast, suggesting strong ties to this specific area of the country.  *See id.* at 7.  Ms. Lorenco also argues that her "financial situation would not permit [her] to fund any attempt to flee if granted bail," lowering her risk of flight.  *Id.*

On the other hand, Ms. Lorenco's incentives for fleeing, and other evidence proffered by the government, suggest a high risk of flight.  "Courts have considered both age and the seriousness of the offenses as incentives to flee."  *Berrocal*, 263 F. Supp. 3d at 1305 (finding that 66-year-old defendant facing 21 years in prison had incentive to flee).  Ms. Lorenco is facing serious charges in the Philippines; she could face up to twenty years in prison, and her age (71) heightens the severity of that sentence.  *See* Resp., ECF No. 12 at 3.  The government proffered that she has family ties and maintains dual citizenship in Portugal, and she would not be extradited were she to go there; she admits she has family ties to the country.  Opp'n at 7 ("[S]he

---

[2] The Court will not address or decide whether Ms. Lorenco is a danger to the community, as the Court concludes that Ms. Lorenco has not met her burden of demonstrating that release is warranted based on risk of flight or special circumstances.

7

still has distant relatives in Portugal."). Those ties to Portugal distinguish Ms. Lorenco's situation from cases where courts declined to find the defendant presented a risk of flight for lack of a motive to abscond. *See, e.g.*, *Pappas*, 2023 WL 7220053, at *3 (finding that the fugitive did not present a risk of flight in part because he "ha[d] been living in the United States and neither party [] indicated any other foreign or even domestic ties where he might abscond."); *Castaneda-Castillo*, 739 F. Supp. 2d at 64 (finding little risk of flight when there was "no evidence in the record that [the fugitive] has ties anywhere else" except the United States, where he was living, and Peru, where the alleged crimes occurred). The government has also proffered that Ms. Lorenco was aware of the red notice, yet she has never voluntarily returned to the Philippines to stand trial for the charges she faces there.

      Ms. Lorenco asserts that she lacks financial means to flee but does not claim to be indigent. *See* Opp'n at 7 (noting that "Ms. Lorenco's income totals around $35,000 per year" and she has "approximately $10,000 to $15,000 total" in savings). Ms. Lorenco has not been found to be indigent for purposes of being entitled to appointed counsel in this matter. And courts have found that a flight risk still existed for defendants with even fewer financial resources than Ms. Lorenco. *Garcia*, 761 F. Supp. 2d at 477 (finding that the defendant did not demonstrate he was not a flight risk despite having "no financial assets"). Indeed, it does not take significant funds to leave the country—particularly if the defendant has family in another country with whom she can reside.

      Finally, there are contested facts about Ms. Lorenco's motivation for leaving the Philippines after the alleged attack: the government alleges that she purchased the flight ticket to Portugal a few days before the attack, which suggested she planned the attack and her departure; Ms. Lorenco argues that her family arranged for her to fly to Portugal because they were

concerned for her health and well-being due to her recent hospitalization. *See* Opp'n at 9. The government's narrative, if true, provides further evidence that Ms. Lorenco presents a risk of flight. If one credits Ms. Lorenco's explanation, her departure does not reflect an attempt to flee.

Having considered the facts and arguments discussed above, the Court finds that if Ms. Lorenco were released she would have both the opportunity and incentive to flee. Accordingly, Ms. Lorenco has failed to prove that she does not present a serious risk of flight.

## II.     Special Circumstances

Next, the Court will address the many allegedly special circumstances that Ms. Lorenco contends warrant her release. For the reasons discussed below, the Court finds that Ms. Lorenco has not overcome the presumption of detention. The special circumstances that she contends entitle her to release are not unique or compelling enough in their totality to warrant bail.

Ms. Lorenco argues that the following circumstances, taken together, warrant her release: (i) her status as a citizen of the United States; (ii) her history and characteristics, including her age (71), status as a homeowner, and long period of time in the community; (iii) her military service; (iv) her health problems, including high blood pressure, among other physical problems, and mental health issues; (v) her living openly in the community since moving back to the United States in 2018; (vi) the delay prior to the extradition proceedings; (vii) the availability of bail in the Philippines; (viii) conditions of supervision which could ensure her appearance in this court; (ix) her ongoing civil proceedings related to her divorce; (x) the factual issues that require her assistance in her defense; and (xi) the unique posture of the case. *See* Opp'n at 11–18.

As an initial matter, the circumstances already raised in the risk of flight analysis do not warrant her release for the reasons outlined above. Turning to the additional special circumstances factors, first, the Court does not find that the delay between the attack at issue and

the present extradition proceedings, about six years, is so long as to tilt in favor of release. *Pappas*, 2023 WL 7220053, at *5 (finding one of the special circumstances factors of delay to weigh in favor of release when "the underlying conduct at issue occurred over twenty-one years ago"); *Castaneda-Castillo*, 739 F. Supp. 2d at 57–58 ("The most compelling argument in favor of release is the fact that Peru has obviously not actively pursued this twenty-five year old charge, thereby resulting in a very lengthy delay."). Second, although the Court recognizes Ms. Lorenco's physical and mental health problems, such conditions do not rise to the level of warranting release. *See, e.g.*, *Garcia*, 761 F. Supp. 2d at 481 (declining to find that the defendant's health conditions rose to a level that justified releasing him on bail, even though he had back surgery, needed therapy "for the surgery to work," had a growth on his neck, and was in danger of losing movement in his left leg); *Huerta*, 2008 WL 2557514, at *2 (finding health problems did not warrant release when the fugitive suffered from Mellitus Diabetes, digestive difficulties following removal of much of his intestines, prostate problems, high blood pressure, and anemia). Concerning Ms. Lorenco's argument that she can be released on strict conditions, the seriousness of the allegations at issue in this matter militate against release on any conditions, consistent with the conclusion drawn in other similar cases. *See, e.g.*, *Perez-Cueva*, 2016 WL 884877, at *3 (finding that the accusations against the defendant—internal parental kidnapping—led to the court concluding that special circumstances did not justify release on bail). Finally, the fact that Ms. Lorenco has been living openly in Georgetown since 2018 similarly does not persuade the Court that release is justified. *Schumann*, 2018 WL 4777562, at *6 ("[T]he fact that he may have been living openly is not sufficient to overcome the presumption against bail."). Although that indicates that she was not hiding her residence, the record also indicates that she did not voluntarily return to the Philippines despite her awareness

of the red notice.  Having considered those circumstances and others raised at the hearing and in the briefs that are not addressed in this opinion, the Court concludes that special circumstances do not exist that would warrant release pending the resolution of extradition proceedings.  Accordingly, Ms. Lorenco has not overcome the presumption of detention.

## CONCLUSION AND ORDER

Having considered the relevant evidence, the precedent governing detention decisions in extradition cases, and all lesser restrictive alternatives to detention, the Court finds that Ms. Lorenco has not overcome the presumption of detention.  The Court finds that Ms. Lorenco is a serious flight risk and that special circumstances do not warrant her release.  Accordingly, it is hereby ORDERED that the government's motion for detention is granted and it is further ORDERED that Ms. Lorenco be held without bond pending further extradition proceedings in this matter.

Dated: July 29, 2024

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE